UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-40067-HLT |
| | ) |
| GREGORY ROBINSON, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM & ORDER</u>**

This case comes before the court on the Defendant's Motion for Release from Custody (ECF No. 33). After reviewing the parties' briefing (ECF Nos. 33 & 39) and conducting a hearing on this motion on April 12, 2019, the court denied the motion from the bench for the reasons stated on the record. The court now writes separately to summarize and memorialize the reasons for the court's ruling.

**I.    BACKGROUND**

The defendant is detained pending trial at CoreCivic detention center in Leavenworth, Kansas ("CCA"). He is suffering from non-alcohol-related liver complications that are real, chronic, and serious. They require ongoing medical attention. His liver disease also impacts his cognitive abilities, although the court determined that he is competent to proceed with this case (ECF No. 35).

The indictment charges the defendant with (Count 1) failure to register firearms and (Counts 2-4) importing, manufacturing, and dealing in explosive materials without a

license.  On July 13, 2018, the court ordered pretrial detention based on its finding that the defendant "poses a serious risk of selling large quantities of illegal fully-automatic weapons and explosive and destructive devices"; that the record indicates the Government has a very strong case against the defendant; and that it was "very disturbing that, within weeks of execution of a search warrant resulting in the seizure of illegal materials, defendant came into possession and was dealing with many more prohibited materials" (ECF No. 9).

The defendant promptly moved for reconsideration of the detention order, in part based on his medical condition (ECF No. 14, at 3).  On September 7, 2018, the court held a hearing on the motion and denied it without prejudice (ECF No. 26).

The defendant once again moves for reconsideration again, this time on the grounds that he is not receiving adequate medical care at CCA.  He reports that, in late March, CCA medical staff administered too much blood thinner and it resulted in him being hospitalized at Overland Park Regional Medical Center for two weeks in the Intensive Care Unit and an additional week in the Emergency Care Unit.  Since returning to CCA, he cannot walk, his feet and hands are swollen, and he is cold.  According to the defendant, "[h]e will likely die in custody if not given immediate medical attention." (ECF No. 33.)

## II. LEGAL STANDARD

The court may reopen a detention hearing at any time before trial if it finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will

reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Reconsideration is permissible "only when there is new information that would materially influence the judgment about whether there are conditions of release that will reasonably assure that the defendant will not flee and will not harm any other person or the community." *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003).

## III. ANALYSIS

The defendant's motion is denied because he has not presented any new information that would materially influence the judgment about whether there are conditions of release that will reasonably assure he will not harm others.[1] The considerations that drove the court's determination that the defendant presents a risk of harm to others have not changed. When the court inquired of defense counsel as to how the defendant's medical condition changes this analysis, counsel merely pointed to his allegedly deteriorated physical condition. Counsel presented no medical evidence that his current physical condition would render him unable to return to dealing in firearms and explosives if he were released. Rather, the defendant appeared to the court to be alert and responsive when he was at the hearing. Furthermore, even if the court were to accept that the defendant's deteriorated physical condition would make it more difficult for him to deal in firearms and explosives if he were released, evidence concerning his cognitive functioning heightens the court's concerns about him being a risk to others.

---

[1] There is no real argument that the defendant poses a risk of flight.

Even turning to the narrow grounds for defendant's motion as to whether he is receiving adequate medical care at CCA (and leaving aside whether his medical condition reasonably assures that he will not harm others), neither party presented any detailed medical evidence on this issue.  Specifically, the court asked defense counsel what medical treatment the defendant would receive if released versus what he is receiving at CCA.  In response, the defendant offered conclusory allegations that (1) CCA is understaffed, and (2) before being incarcerated, the defendant visited the VA "several times a week."  When the court asked for the defendant's medical evidence that he would "likely die in custody if not given immediate medical attention," counsel pointed out only that the defendant's incarceration prevents him from being on a liver transplant list.  Again, counsel offered no specifics about what care the defendant should be receiving versus what he is receiving at CCA.

Conversely, the court inquired of prosecution counsel as to how the defendant's medical treatment during his competency evaluation at the U.S. Medical Center for the BOP in Springfield (when he apparently did not experience any major medical problems) differed from his treatment since returning to CCA.  Like defense counsel, prosecution counsel was not able to cogently articulate any difference in medications being administered to the defendant at CCA versus those he was receiving outside of CCA when he was allegedly doing better (whether at the VA or during his competency evaluation).

In sum, neither party presented any specifics as to what medical treatment the defendant should be receiving that he is not receiving at CCA, or how his condition

would allegedly improve if he were released.  This lack of medical evidence is most troubling because the court, concerned about defendant's medical condition, expressly invited the parties to confer about the court's expectations in advance of the hearing.  The court advised counsel that it assumed witnesses would be needed at the hearing, and the court invited a phone conference if the parties wanted to discuss witnesses or other issues in more detail prior to the hearing.  (Ex. A.)  Neither party responded to this invitation.  And neither party presented any medical evidence from which the court could ascertain whether, how, or why the defendant's medical condition would allegedly improve if he were released from custody, let alone the extent to which the changes to his medical condition would bear on the risk-of-harm-to-others factor if he were released from custody.  Instead, both parties merely offered conclusory and unhelpful arguments that were insufficient for the court to make any relevant factual findings under the applicable legal standards.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Release from Custody (ECF No. 33) is denied.  The defendant shall remain temporarily detained in the custody of the U.S. Marshal.

Dated April 15, 2019, at Topeka, Kansas.

s/Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge